# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Newport News Division

**FRED RICHARD FOSKEY II,**

     **Plaintiff,**

**v.**                                    **ACTION NO.  4:13cv66**

**CAROLYN W. COLVIN,**
**Acting Commissioner,**
**Social Security Administration,**

     **Defendant.**

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Plaintiff Fred Richard Foskey, II ("Mr. Foskey") seeks judicial review of the final decision of the Defendant, the Acting Commissioner of the Social Security Administration ("Acting Commissioner"), which denied Mr. Foskey's claim for Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act.  Both parties filed motions for summary judgment, ECF Nos. 16 and 19, with briefs in support, ECF Nos. 17 and 20, which are now ready for a recommended resolution.

This action was referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. §§ 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), Local Civil Rule 72, and the April 2, 2002 Standing Order on Assignment of Certain Matters to United States Magistrate Judges.  For the following reasons, the undersigned **RECOMMENDS** that Mr. Foskey's Motion for Summary Judgment, ECF No. 16 be **DENIED**; the Defendant's Motion for Summary Judgment, ECF No. 19, be **GRANTED**; and the final decision of the Acting Commissioner be **AFFIRMED** and that this case be **DISMISSED WITH PREJUDICE.**

# I. PROCEDURAL BACKGROUND

Mr. Foskey filed an application for DIB on September 13, 2007, alleging a disability onset date of June 2, 2006. R. 95-99.[1] His application was initially denied on May 12, 2008, R. 66-70, and denied again upon reconsideration on August 19, 2008. R. 80-86. Mr. Foskey requested a hearing in front of an administrative law judge ("ALJ") on September 12, 2008, R. 87-88, which was held on November 24, 2009 via video conference. R. 33-65. The ALJ issued his decision on December 7, 2009 that denied Mr. Foskey's DIB application. The Appeals Council for the Office of Disability and Adjudication ("Appeals Council") initially denied Mr. Foskey's request for review of the ALJ's decision on September 14, 2011, R. 8-11, and again on March 12, 2013, after it re-opened the record to consider additional evidence. R. 1-7. As such, the ALJ decision became the final decision of the Acting Commissioner. After exhausting his administrative remedies, Mr. Foskey filed this complaint for judicial review of the Acting Commissioner's final decision on May 13, 2013. ECF No. 1. The Acting Commissioner filed an Answer on July 24, 2013. ECF No. 5. Because both parties have filed motions for summary judgment, the matter is now ripe for recommended adjudication.

# II. STANDARD OF REVIEW

Under the Social Security Act, the Court's review is limited to determining whether the Acting Commissioner's final decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

---

[1] "R." refers to the certified administrative record that was filed under seal on July 24, 2013, pursuant to Local Civil Rules 5(B) and 7(C)(1).

(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938))). It consists of "more than a mere scintilla" of evidence, but may be somewhat less than a preponderance of the evidence. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966).

In determining whether the Acting Commissioner's decision is supported by substantial evidence, the Court must examine the record as a whole, but it may not "undertake to re-weigh the conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the Secretary." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (citing *Craig v. Chater*, 76 F.3d at 589 (4th Cir. 1996)). Indeed, the Acting Commissioner's findings as to any fact, if the findings are supported by substantial evidence, are conclusive and must be affirmed. *Perales*, 402 U.S. at 390. Moreover, the Acting Commissioner is charged with evaluating the medical evidence and assessing symptoms, signs, and medical findings to determine the functional capacity of the claimant. *Hays*, 907 F.2d at 1456-57. Judicial review of an administrative law judge's credibility determinations are "virtually unreviewable" and entitled to substantial deference. *Darvishian v. Geren*, 404 F. App'x 822, 831-32 (4th Cir. Dec. 14, 2010) (unpublished) (citing *Bieber v. Dep't of the Army*, 287 F.3d 1358, 1364 (Fed. Cir. 2002)); *see also Salyers v. Chater*, 107 F.3d 867 (4th Cir. Feb. 20, 1997) (unpublished per curiam) ("The ALJ's credibility findings . . . are entitled to substantial deference."). Overall, if the Acting Commissioner's resolution of the conflicts in the evidence is supported by substantial evidence, the Court is to affirm the Acting Commissioner's final decision. *Celebrezze*, 368 F.2d at 642; *Craig v. Chater*, 76 F.3d 585 (4th Cir. 1996) (granting the Commissioner latitude in resolving inconsistencies in the evidence, which the Court reviews for clear error or lack of substantial

3

evidence).

### III. ALJ's FINDINGS OF FACT AND CONCLUSIONS OF LAW

The ALJ employs a five-step sequential process in every Social Security disability claim analysis to determine the claimant's eligibility.  The Court reviews the record and examines the five-step analysis to determine whether the correct legal standards were applied and whether the resulting decision of the Acting Commissioner is supported by substantial evidence.  20 C.F.R. § 404.1520.

In accordance with the five-step sequential analysis, the ALJ made the following findings of fact and conclusions of law:  First, Mr. Foskey has not engaged in substantial gainful activity ("SGA") since June 2, 2006, the alleged onset date of disability, and he met the insured status requirements of the Social Security Act through December 31, 2010 ("DLI").  R. 20.  Second, Mr. Foskey had the following severe impairments: migraine headaches, post-traumatic stress disorder ("PTSD"), dysthymia, mood disorder, and depression.  *Id.*  (citing 20 C.F.R. § 404.1520(c)).  Mr. Foskey's lumbar and cervical pain, and bilateral ankle arthritis were non-severe impairments because they did not require any significant medical treatment and did not result in any continuous exertional or nonexertional functional limitations.  *Id.* (citing 20 C.F.R. § 404.1509; Social Security Ruling ("SSR") 85-28)).  R. 20-21.  Third, Mr. Foskey does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R Part 404, Subpart P, Appendix 1.  R. 21-22 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).  Fourth, Mr. Foskey has the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, but with the following nonexertional limitations: work that requires only occasional balancing, no exposure to

dangerous equipment or unprotected heights, no climbing of ladders, ropes or scaffolds, but he can do simple, repetitive work that has limited contact with the general public. R. 22-25. Fifth, while Ms. Foskey has past relevant work as a restaurant manager, he was unable to perform that past relevant work because it exceeds his RFC. R. 25-26. Furthermore, after considering Mr. Foskey's age, education, work experience, and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that Mr. Foskey could perform, and as such, he has not been under disability as defined by the Social Security Act from June 2, 2006 through December 7, 2009. R. 26-27 (citing 20 C.F.R. § 404.1569, 404.1569(a), 404.1520(g)).

## IV. RELEVANT FACTUAL BACKGROUND

In his application, Mr. Foskey alleged a disability onset date of June 2, 2006. R. 95-99. As of that date, Mr. Foskey was a single, forty-three year old who graduated from high school and obtained some vocational training while he was a member of the Air Force from January of 1984 to October of 1987. R. 26, 96. Mr. Foskey previously worked as a restaurant manager, but has not worked since June 2, 2006. R. 42, 45-46. At the ALJ hearing held on November 24, 2009, Mr. Foskey provided the following testimony:

Mr. Foskey lived in a house with his fiancé and her eleven year old daughter. When asked to describe his typical day, Mr. Foskey stated that he wakes up around 4:00 a.m. or 4:30 a.m. R. 39. He then feeds the cats and his therapy dog, and proceeds to get the other members of the household up and out the door. *Id.* Typically, he will drive Monday through Friday to drop-off and pick-up his fiancé's daughter at school, R. 38, but he otherwise likes to limit the amount of time he spends in public, R. 55-56, although he will occasionally drive himself to the Department of Veterans' Affairs ("VA") hospital for medical appointments, R. 48, and to the

grocery store, but only if his therapy dog accompanies him. R. 39.

Mr. Foskey reported having no hobbies, R. 38, and that he is able to do a limited amount of housework and yard work, which specifically includes laundry. R. 39. He previously served in the Air Force from 1984 to 1987, and now collects 50% disability benefits from the VA, which comes out to approximately $728 per month. R. 40, 97. Mr. Foskey last worked on June 2, 2006 when he left his job as restaurant manager for County Grill. R. 42, 45-46. He collected unemployment payments from that time until July of 2009. R. 41. Around the time he stopped working, Mr. Foskey went to Ohio to assist a friend in running or opening a bar. R. 42. However, that opportunity did not last long, and he returned to Virginia. R. 42, 47.[2]

Mr. Foskey testified that very intense migraine headaches were the main reason he could not continue working. R. 42. These migraines would occur two to three times, R. 42, or three to four times, R. 51, per week. When they occur, he needs to be in a quiet place with no light for four to eight hours. R. 51. He also claimed to suffer from degenerative disc disease in his neck and back, and arthritis in his feet, which made it difficult to walk. R. 42. He testified to taking numerous medications to treat the pain. *Id.* Mr. Foskey also suffered from alcoholism, but has not consumed alcohol since 2004, after he completed an inpatient rehabilitation program as a ward of the state as a result of a driving under the influence conviction. *Id.*

Mr. Foskey testified that, during his last job as a restaurant manager, because of the migraines, he often stayed in his office as much as possible to avoid interaction with people,

---

[2] Mr. Foskey's testimony on this subject was inconsistent. He initially testified that he was only in Ohio for three weeks before returning to Virginia, and that the friend's business fell through because the Sheriff "came and locked it all up." R. 42. Later, under examination by counsel, Mr. Foskey testified that he was in Ohio for two months, but that it was a stressful situation that was bad for his depression and bouts with alcoholism. R. 47. He testified that he returned to Virginia because his friend was a rude, violent, alcoholic who hit people. *Id.* Regardless, Mr. Foskey's time in Ohio was short-lived before he returned to Virginia, where he continued to collect unemployment and VA benefits.

especially because he angered easily. R. 45-46. Often he would fire people, throw things, and become violent as a result of the migraines. *Id.* Additionally, the arthritis made standing and walking difficult because his "feet really hurt a lot." R. 46. He has visited the emergency room on multiple occasions because of the migraines; he estimates between six to eight times per year since 2006. R. 52. When at the ER, he received intravenous fluids, and medication for the pain. *Id.*

In addition to migraines, Mr. Foskey has suffered from depression and PTSD since 2006. R. 49. He has been prescribed many different medications, all of which have little effect on his mood and preference for isolation. R. 49-50. As a side effect of the medication, he gets very sleepy, and as a result, he takes multiple naps throughout the day. R. 50. After his fiancé and her daughter are at work and school, Mr. Foskey will nap for a couple hours, wake up to take more medication, and then fall back asleep. R. 50-51.

Mr. Foskey attributes his PTSD, which results in nightmares and unexplained crying bouts, to various traumas he experienced throughout his life. R. 54-55. Specifically, a friend of his died in his arms after a motorcycle accident, he saved another woman and her children from a car accident before the car exploded, his father had recently passed away, and his former fiancé committed suicide. R. 55-56. He therefore does not like to go out in public, and isolates himself, R. 56, which contributes to a "non-existent" energy level. R. 57.

In reaching his decision, the ALJ determined that Mr. Foskey's medical determinable severe impairments could reasonably be expected to cause the alleged symptoms, but that Mr. Foskey's statements concerning the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they are inconsistent with the RFC assessment. R. 23.

7

Specifically, the ALJ relied on, and summarized, medical reports from four non-examining Disability Determination Services ("DDS") consultants, and four treating physicians or treating therapists. In general, the ALJ noted that Mr. Foskey has been complaining of migraines since 1987, when he was attacked and hit in the head. R. 23. Since that time, he has complained of frequent migraines, which have generally been treated through medication, as radiological studies of his brain did not reveal any abnormalities. *Id.* As of 2004, Mr. Foskey reported issues of depression existing since 1998. R. 24 (citing R. 212-61). Mr. Foskey's depression was secondary to his migraines, and he made progress through medication and individual and group therapy, however, he was generally not motivated to seek employment. R. 24 (citing R. 262-311).

On August 22, 2006, Mr. Foskey increased the collection of his VA disability pension from 10% to 50%, because of the chronic migraine headaches and decreased function, which prevented him from working. R. 23 (citing R. 362-71). At the time, his treating psychologist Dr. Tonia Bagby noted that Mr. Foskey insisted on his entitlement to VA disability benefits and accordingly, had little motivation to seek employment. However, Mr. Foskey continued to progress in his mental health treatment, and was close to meeting goals by July of 2007. R. 24 (citing R. 312-61). Even though he was progressing, Mr. Foskey desired additional mental health support and treatment.

In September of 2007, he began seeing psychiatrist Dr. Jessica Gifford. R. 24 (citing 422-71). On the outset, it was noted that Mr. Foskey was depressed and frustrated over his physical condition and dentition. R. 24. Because he was becoming more isolated and withdrawn, Mr. Foskey eventually obtained a service animal in the form of a therapy dog, which

8

was solely provided for emotional support, and as Mr. Foskey testified to, for assistance with balance. R. 24, 39.

In March of 2008, non-examining DDS consultant Dr. Leopold Moreno reviewed Mr. Foskey's records and determined that he suffered from frequent migraine headaches, but that those migraines were well-controlled with medicine regimen compliance. R. 23-24 (citing R. 855-61). Moreover, when present, the migraines affected Mr. Foskey's functional ability, but had little impact on his ability to do heavy work, although it was recommended he not work around unprotected heights or with dangerous machinery. *Id.* The ALJ did not explicitly assign a weighted value to Dr. Moreno's opinion.

In May of 2008, similarly, non-examining DDS consultant Dr. Hillery Lake determined Mr. Foskey had a low self-esteem coupled with low motivation, due in part to recent complications regarding his fiancé's infidelity. R. 25 (citing R. 928-41; R. 942-45). Overall, Dr. Lake noted moderate limitations on Mr. Foskey's social functioning and thus, moderate limitations on his overall functioning. However, she determined that this was not a significant limitation and did not greatly impact his ability to work, even though there was evidence that due to Mr. Foskey's low-motivation, he again, felt entitled to benefits for disability. *Id.* Again, the ALJ did not explicitly assign a weighted value to Dr. Lake's opinion.

Next, in August of 2008, two non-examining DDS consultants reviewed Mr. Foskey's treatment records, Dr. Patricia Staehr and Dr. Daniel Walter. The ALJ afforded great weight to both of their opinions. First, Dr. Staehr noted that Mr. Foskey's limitations are greatly controlled through compliance with prescribed medications. R. 24 (citing R. 1075-81). When he is on his medication and not suffering from migraines, Mr. Foskey is able to go out to the movies,

9

restaurants, and able to drive and shop, which demonstrates significant abilities. *Id.* At the same time, Dr. Staehr recognized that during severe migraine attacks, Mr. Foskey has difficulty completing most activities, but she noted that these severe attacks were typically triggered by non-compliance with medication. Overall, Dr. Staehr found that Mr. Foskey could work at all exertional levels with little limitation, other than limitations around unprotected heights or dangerous machinery, with only occasional climbing of ladders, ropes, or scaffolds. To conclude, Dr. Staehr opined that Mr. Foskey had the ability to complete a "wide range of work." R. 1081.

Similarly, Dr. Walter found that Mr. Foskey's frustration over an inability to work typically exacerbated any depression symptoms and low motivation. R. 25 (citing R. 1057-70; 1071-74). However, Dr. Walter still found that Mr. Foskey could independently function and provide for his own daily needs, albeit with some limitations when symptoms worsened, but that did not preclude all work activity. Instead, Dr. Walter found that Mr. Foskey should have little problem completing simple, routine tasks. *Id.*

Lastly, the ALJ referred to treating doctors at the VA who saw Mr. Foskey through 2009, including psychiatrist Dr. Jessica Gifford, who was eventually replaced by psychologist Dr. Sarah Ingle once Dr. Gifford went on maternity leave. R. 24-25. The treatment reports for 2009 show that Mr. Foskey was continuously "making progress toward [his] goals," through medication, group therapy, and one-on-one therapy sessions. *Id.* (citing R. 1340-78; 1383-1416). In November of 2009, licensed social worker Ellen Moriarty opined that Mr. Foskey suffered from "major depression with psychotic features and [was] paranoid around people." R. 1380. However, the ALJ gave no weight to her assessment because it was inconsistent with other

treatment records that showed Mr. Foskey was progressing, and because as a social worker therapist, she was not an acceptable medical source. R. 24. Similarly, after Dr. Ingle replaced Dr. Gifford, she opined that Mr. Foskey was unable to work due to extreme limitations that were exacerbated by every day stressors. R. 24-25 (citing 1381-82). The ALJ gave this assessment little weight because she had a very brief treatment history with Mr. Foskey, and because it was inconsistent with the other treatment record evidence. R. 25.

Overall, based on the medical evidence in the record, the weight assigned to the treating physicians' opinions and the opinions of the DDS consultants, and the assessment of Mr. Foskey's own credibility, the ALJ determined that Mr. Foskey could perform a full range of work at all exertional levels, but with nonexertional limitations, such as only occasional balancing, no exposure to dangerous equipment or unprotected heights, ladders, ropes, or scaffolds, and found that Mr. Foskey could perform simple, repetitive tasks that involves limited contact with the general public. R. 25.

Mr. Foskey now raises two main issues on review: first, whether the ALJ improperly weighed the medical opinions of the non-examining DDS consultants, the treating pyschologist, and the treating social worker. Second, whether the ALJ improperly discounted the testimony and credibility of Mr. Foskey, in light of the objective medical evidence. ECF No. 17. For the following reasons discussed below, the Court would affirm the final decision of the Acting Commissioner.

## V. ANALYSIS

**A. The ALJ properly gave less weight to treating physician Dr. Ingle's opinion and social worker Moriarty's opinion because both opinions were inconsistent with the totality of the objective medical evidence in the record.**

11

First, Mr. Foskey argues that the ALJ improperly assigned greater weight to the non-examining DDS consultants, and should have assigned more weight to the opinions of treating psychologist Dr. Ingle and treating social worker Ms. Moriarty.   ECF No. 17 at 17-23. Generally, the Acting Commissioner's disability determination is based on the totality of the evidence in the record, including the "objective medical evidence," and any "other evidence from medical sources, such as medical history, opinions, and statements about treatment . . . ." 20 C.F.R. § 404.1512(b).  If the medical evidence, including all medical examinations by all physicians, is consistent, then the ALJ makes a determination based on all of the evidence.  20 C.F.R. § 404.1520b(a).  However, if any of the evidence is inconsistent, the ALJ must decide which evidence should receive controlling weight.  20 C.F.R §§ 404.1520b(b); 404.1527.  Under the "treating physician rule," a treating physician's opinion must be given controlling weight if: (1) it is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) it is not inconsistent with other substantial evidence in the record.  *See Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(d)(2); Social Security Ruling ("SSR") 96-2p.

If the treating source's opinion is not well-supported by medically acceptable techniques, or is inconsistent with the other substantial evidence, the treating physician's opinion will not be given controlling weight.  *Baxter v. Astrue*, No. 3:11-CV-679, 2013 WL 499338, at *4 (E.D. Va. Feb. 7, 2013) (citation omitted).   The treating physician's opinion will also not be given controlling weight if the physician opines on an issue reserved for the Commissioner, such as whether the claimant is disabled for employment purposes.  *See Jarrells v. Barnhart*, No. 7:04-CV-411, 2005 WL 1000255, at *4 (W.D. Va. Apr. 26, 2005); *accord* 20 C.F.R. §§ 404.1527(d)(3), (e).  If the opinion is deemed not controlling, then the ALJ determines the

weight of the opinion by considering the factors in 20 C.F.R. § 404.1527: the length, nature, and extent of the treatment relationship; frequency of examinations; supportability by relevant evidence; consistency with the record as a whole; the physician's degree of specialization; and any other factors tending to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c)(2)-(6); *Hines v. Barnhart*, 453 F.3d 559, 563 (4th Cir. 2006). Additionally, to determine the claimant's RFC, the ALJ can rely on, and give weight to, the opinions of the state agency DDS consultants, when such an opinion is consistent with the record. *See* 20 C.F.R. § 404.1527(e); *see also Smith v. Schweiker*, 795 F.2d 343, 345-46 (4th Cir. 1986); SSR 96-6p. The opinion and report of a non-treating, non-examining DDS consultant is not substantial evidence when it is "contradicted by all other evidence in the record." *Millner v. Schweiker*, 725 F.2d 243, 245 (4th Cir. 1984).

First, here, even though Dr. Ingle was a treating physician, the ALJ properly afforded little weight to her medical opinion because it was inconsistent with all of the other objective medical evidence in the record, and because she had only been treating Mr. Foskey for a short period of time. *See Craig*, 76 F.3d at 590; 20 C.F.R. § 404.1527(d)(2). In general, the objective medical evidence in the record shows that Mr. Foskey suffers primarily from migraine headaches, and secondarily from depression and post-traumatic stress. The record also shows that while Mr. Foskey has admitted himself to the emergency room on various occasions, the migraines have been treated with medication, and the medical records show no other abnormalities that would result in significant functional limitations. Moreover, the records from Dr. Ingle's predecessor, Dr. Gifford, show that Mr. Foskey was making progress in individual and group therapy, with the aid of medication interventions. Accordingly, Dr. Ingle's opinion

that Mr. Foskey was extremely limited in his daily functioning with "continual episodes of deterioration or decompensation in work or work-like settings" was inconsistent with the totality of the objective medical evidence. *See* R. 1381-82. Because it was inconsistent, the ALJ properly determined to afford little weight to Dr. Ingle's opinion based on the factors in 20 C.F.R. § 404.1527. The "length, nature, and extent of the treatment relationship" between Dr. Ingle and Mr. Foskey was short and relatively new, because Dr. Ingle had just recently replaced Dr. Gifford, who left on maternity leave. 20 C.F.R. § 404.1527(c); R. 24-25. Also of note, Dr. Ingle's opinion was contained on a form entitled "Mental Impairment Questionnaire" for the purpose of providing it to the Social Security Administration. R. 1381-82. "Form reports in which a physician's obligation is only to check a box or fill in a blank are weak evidence at best. As we pointed out in discussing 'residual functional capacity reports,' where these so-called 'reports are unaccompanied by thorough written reports, their reliability is suspect . . . ." *Mason v. Shalala*, 994 F.2d 1058 (3d Cir. 1993) (quoting *Brewster v. Heckler*, 786 F.2d 581, 585 (3d Cir. 1986)) (additional citations omitted). Accordingly, for all of the above reasons, the Court would find that the ALJ applied the correct legal standard in evaluating the evidence, 42 U.S.C. § 405(g); *Hays*, 907 F.2d at 1456, and properly afforded Dr. Ingle's opinion little weight. *Cf. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992) ("The ALJ need not accept an opinion of a physician—even a treating physician—if it is conclusionary and brief and is unsupported by clinical findings.") (citing *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).

For the same reasons, the ALJ properly afforded no weight to the social worker's opinion. As an initial matter, the social worker/therapist could provide evidence "to show the severity" of any alleged impairment and how it affected Mr. Foskey's ability to work. *See* 20

14

C.F.R. § 404.1513(d). The social worker is not, however, an acceptable medical source who can provide evidence to establish that Mr. Foskey has a medically determinable impairment. *See id.* 404.1513(a). Regardless, it was still proper for the ALJ to afford no weight to the social worker's opinion because it was not only inconsistent with the rest of the medical evidence, but it was inconsistent with the social worker's previous records that noted that Mr. Foskey was improving with treatment. *See, e.g.,* R. 950 ("Client presented as upbeat."); R. 1191 ("Client presented as upbeat and happy."); R. 1204 ("Client presented as depressed and cried in session . . . However he is coping better then [sic] he has in the past."). Also, the social worker completed a form similar to the one completed by Dr. Ingle. R. 1379-80. For all of these reasons, the Court would find that the ALJ's decision to afford the social worker's opinion no weight was proper, and supported by substantial evidence in the record.

Next, the Court would find that the opinions of DDS consultants Dr. Staehr and Dr. Walter were supported by the objective medical and treatment records in the record. To be sure, Mr. Foskey's migraines and depression were severe impairments which produced symptoms with minimal functional limitations. However, these symptoms were appropriately treated through medicine and therapy, and as a result, Mr. Foskey's condition was improving and progressing. He was not precluded from engaging in gainful activity as a result. Specifically, Dr. Staehr found that the medical records show that Mr. Foskey has been receiving treatment for migraines for 1987, but that all other "neurological findings" and "physical examinations" show normal functions within normal limits. R. 1080 (citing examinations and tests from 2006 through 2008). Similarly, Dr. Walter noted mild to moderate functional limitations for Mr. Foskey, R. 1067, but concluded that even with this limitations, Mr. Foskey is still able complete

15

"simple and repetitive tasks on a full time and regular basis." R. 1074.

Overall, the Court would find that the substantial evidence in the record supports the ALJ's weighing of the medical opinions in this case. Mr. Foskey asks the Court to find it improper for the ALJ to give less weight to two isolated form opinions, one from a treating physician who had very little treatment history with Mr. Foskey, and one from a social worker. Instead, the substantial evidence in the record supports the opinions of the DDS consultants, who recognize Mr. Foskey's mild limitations due to migraines and depression, but who ultimately conclude that he is still able to function, especially when in compliance with medication regimens and therapy programs. Therefore, the Court would find that the substantial evidence in the record supports this conclusion and the ALJ's decision, and would affirm the Acting Commissioner's final decision on this basis.

### B. The ALJ's credibility assessment of Mr. Foskey was also proper.

Lastly, Mr. Foskey argues that the ALJ improperly found that his statements regarding the intensity, persistence, and limiting effects of his symptoms were not credible to the extent those statements were inconsistent with the ALJ's RFC finding. ECF No. 17 at 23-24. When determining Mr. Foskey's RFC, the ALJ considered (1) the impairments as supported by the objective medical evidence and (2) the impairments based on Mr. Foskey's subjective complaints. *Craig v. Chater*, 76 F.3d 586, 594 (4th Cir. 1996). When considering Mr. Foskey's subjective complaints and allegations of functional limitations, the ALJ must make a credibility assessment of the intensity of the symptoms to determine the true degree of limitation. *Id.*; *see also* 20 C.F.R. § 404.1529(a); SSR 96-7p. Under the *Craig* test, the ALJ must first determine whether there is an underlying medically-determinable physical or mental impairment that

reasonably could produce the pain or symptoms. *Id.* If so, then the second step requires the ALJ to evaluate the claimant's statements about the intensity and persistence of the pain and the extent to which it affects or limits the ability to work. *Id.* Throughout the analysis, the ALJ must sufficiently explain the conclusions, including the weight assigned to the relevant evidence, so that a reviewing court can evaluate the basis for the final decision. *Ivey v. Barnhart*, 383 F. Supp. 2d 387, 389-90 (E.D.N.C. 2005) (citing *Arnold v. Secretary*, 567 F.2d 258, 259 (4th Cir. 1977)). However, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90 (4th Cir. 1984) (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)).

After considering all of the evidence in the record, the ALJ determined that Mr. Foskey's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but that Mr. Foskey's statements concerning the intensity, persistence, and limiting effects of those symptoms were not credible to the extent that they were inconsistent with the RFC finding. R. 23. In the RFC finding, the ALJ limited Mr. Foskey to work that involved simple, repetitive tasks, with limited contact with the general public, but found that he still had the ability to work at all exertional levels. R. 22. In finding Mr. Foskey's testimony only partially credible, the ALJ relied on the objective medical records and the opinions of DDS consultants, which were not consistent with Mr. Foskey's statements, to the extent that he alleged complete immobilization or worsening of symptoms during a migraine headache episode. This finding is supported by substantial evidence in the record.

First, Mr. Foskey's own testimony during the ALJ hearing was inconsistent. On the one

17

hand, he testified that the migraines are very intense two to three times per week, R. 42, but then later testified that the migraines occur three to four times per week, R. 51-52. The objective medical records showed that the migraines were treated through medication, that no other abnormalities existed as a result of physical and neurological testing, and that compliance with medication regimens alleviated symptoms. Moreover, Mr. Foskey testified to driving his fiancé's daughter to and from school, driving to the grocery store, and completing various chores around the house. Similarly, Mr. Foskey's depression and PTSD were treated through individual and group therapy at the VA, with noted progress and improvement. Any testimony regarding complete incapacitation, or even partial incapacitation, due to migraines and depression, cannot be reconciled with the objective evidence in the record, and Mr. Foskey's own testimony regarding his abilities. The Court is aware that Mr. Foskey's migraine symptoms occur with varying frequency, but such an impairment does not preclude Mr. Foskey from engaging in gainful activity with the limitations as described by the ALJ. Moreover, "[b]ecause he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight." *Shively v. Heckler*, 739 F.2d 987, 989-90 (citing *Tyler v. Weinberger*, 409 F. Supp. 776 (E.D. Va. 1976)). In discounting portions of Mr. Foskey's testimony about his subjective complaints, the ALJ properly relied on the medical evidence in the record in applying the correct agency regulations to determine he had the RFC to complete the full range of exertional work with specific limitations, which accounts for any memory deficiencies, concentration issues, and problems working with the general public. The Court would find that substantial evidence in the record supports the ALJ's credibility determination. Therefore, the Court would affirm the Acting Commissioner's final

decision on this basis as well.

## VI. RECOMMENDATION

For these reasons, the undersigned **RECOMMENDS** that Mr. Foskey's Motion for Summary Judgment, ECF No. 16, be **DENIED**; the Defendant's Motion for Summary Judgment, ECF No. 19, be **GRANTED**, the final decision of the Acting Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is mailed to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a) plus three days permitted by Federal Rule of Civil Procedure Rule 6(d). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to all counsel of record.

Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
February 21, 2014

## CLERK'S MAILING CERTIFICATE

A copy of this Report and Recommendation was mailed on this date to the following:

Ms. Barbara Jean Evans-Yosief
Evans-Yosief Law Firm
1517 Hardy Cash Drive
Hampton, Virginia 23666
Counsel for the Plaintiff

Mr. Joel Eric Wilson
United States Attorney's Office
World Trade Center
101 West Main Street, Suite 8000
Norfolk, Virginia 23510
Counsel for the Defendant

Fernado Galindo
Clerk of the Court

By:

Deputy Clerk
February 21, 2014